IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

ELECTRONICALLY FILED
Jun 06 2017
U.S. DISTRICT COURT
Northern District of WV

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, ) ) ) | |
| Plaintiff, ) ) | CIVIL ACTION NO. 2:17-CV-73 (Bailey) |
| v. ) ) | **COMPLAINT AND JURY TRIAL DEMAND** |
| BIG LOTS STORES, INC., ) ) | |
| Defendant. ) ) | |

## NATURE OF THE ACTION

This is an action under Titles I and V of the Americans with Disabilities Act of 1990 ("the ADA"), as amended by the ADA Amendments Act of 2008, Pub. L. 110-325, and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices and to provide appropriate relief to Charging Parties Christena Johnson and Sheria Blackburn who were adversely affected by such practices. As alleged with greater particularity in Paragraphs 18 – 21(e) below, the U.S. Equal Employment Opportunity Commission ("the Commission") alleges that Defendant Big Lots Stores, Inc. ("Defendant") subjected Johnson to an on-going hostile work environment on the basis of her disability and because she is regarded as disabled. The Commission further alleges that Defendant subjected Johnson to denial of promotion/selection on the basis of her disability, because she is regarded as disabled, and because she opposed employment practices made unlawful by the ADA, filed a charge of discrimination under the ADA, and exercised rights protected by the ADA. The Commission further alleges that Defendant subjected Blackburn to an adverse alteration of the terms and conditions of her employment and constructive discharge because of her association with a person with a disability

(Johnson), because she opposed employment practices made unlawful by the ADA, and because she exercised rights protected by the ADA and aided and encouraged Johnson to exercise or enjoy rights protected by the ADA.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) & (3) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-5(f)(1) & (3); Section 503 of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12203(c), which incorporates by reference Section 107(a) of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12117(a); and Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

2. The employment practices alleged to be unlawful were and are being committed within the jurisdiction of the United States District Court for the Northern District of West Virginia.

## PARTIES

3. Plaintiff, the U.S. Equal Employment Opportunity Commission ("the Commission"), is the Agency of the United States of America charged with the administration, interpretation and enforcement of Titles I and V of the ADA and is expressly authorized to bring this action by Sections 107(a) and 503(c) of the ADA, 42 U.S.C. §§ 12117(a) & 12203(c).

4. At all relevant times Big Lots Stores, Inc. ("Defendant"), an Ohio corporation, has continuously been doing business in the State of West Virginia and the City of Elkins, and has continuously had at least fifteen (15) employees.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

6. In each of calendar years 2013, 2014, 2015, and 2016, Defendant continuously employed more than 500 employees.

## STATEMENT OF CLAIMS

7. More than thirty days prior to the institution of this lawsuit, Charging Parties Johnson and Blackburn filed charges with the Commission alleging violations of the ADA by Defendant.

8. On February 3, 2017, the Commission issued to Defendant Letters of Determination finding reasonable cause to believe that the ADA was violated and inviting Defendant to join with the Commission in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

9. The Commission engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letters of Determination.

10. The Commission was unable to secure from Defendant a conciliation agreement acceptable to the Commission.

11. On April 3, 2017, the Commission issued to Defendant Notices of Failure of Conciliation.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

13. Since at least May 2014 and continuing to present, Defendant has engaged in unlawful employment practices at its Elkins, West Virginia store, in violation of Sections 102(a), (b)(1), (b)(4) and 503(a) and (b) of the ADA, 42 U.S.C. §§ 12112(a), (b)(1) & (b)(4), and §§ 12203(a) & (b).

14. Christena Johnson has been continuously employed by Defendant at its Elkins, West Virginia store since on or about 2011, and currently holds the position of part-time cashier/stocker.

15. Since her birth, Ms. Johnson has been entirely deaf in one ear and partially deaf in her other ear, and she has a speech impairment related to her deafness.

16. At all relevant times, Defendant and its personnel (including but not limited to David Perry, Billie Jo Bishop, Donovan Bond, and all of the employees at the Elkins store) have known that Johnson has hearing and speech impairments that substantially limit one or more major life activities, and they have regarded her as a person with a disability.

17. Sheria Blackburn was employed by Defendant at its Elkins, West Virginia store from 1995 until on or about December 9, 2014, and most recently held the position of full-time furniture department manager.

18. Since on or about May 2014 and continuing to present, Defendant has subjected Christena Johnson to harassment that has created a hostile work environment on the basis of her disability and because she was and is regarded as disabled, including but not limited to the following conduct:

    a) Since on or about May 2014, a number of Johnson's co-workers and one associate manager at the Elkins store have frequently referred to her as "retard,"

4

"mumblemouth," "crazy," and "stupid" because of her deafness and related speech impairment.

    b) Since on or about May 2014, a number of Johnson's co-workers and one associate manager at the Elkins store have frequently mocked Johnson's manner of speech and laughed at her because of her speech impairment.

    c) Since on or about May 2014, a number of Johnson's co-workers and one associate manager at the Elkins store have, on multiple occasions, used the store loudspeaker to mock and imitate Johnson's manner of speech by repeating words that Johnson has difficulty pronouncing due to her deafness and speech impairment.

    d) Since on or about May 2014, a number of Johnson's co-workers and one associate manager at the Elkins store have, on multiple occasions, harassed Johnson by erasing or scratching out her scheduled shifts from the Elkins store's handwritten schedule causing her to be late for her shifts and/or not knowing when she was supposed to work.

    e) Beginning in May 2014, Johnson repeatedly told Sheria Blackburn that she was being harassed in the form described above.

    f) Beginning on or about May 2014, Blackburn repeatedly reported the ongoing harassment of Johnson to Elkins store manager David Perry.

    g) Perry responded to Blackburn's reports that Johnson was being subjected to disability harassment by repeatedly telling Blackburn that he did not want corporate getting involved with the harassment issue, making statements to the effect of "We don't want corporate coming down on us" and "As long as corporate stays away from us, we will be in good shape."

h) On or about September 2014, or possibly earlier, Johnson reported the ongoing harassment to Elkins store manager David Perry.

i) At no time did Defendant and Elkins store manager David Perry take prompt corrective actions reasonably calculated to ending the harassing conduct and preventing its recurrence. For instance, Defendant and Perry did not conduct a prompt and thorough investigation, failed to consider and act upon information received concerning the harassment, did not impose disciplinary action against the employees engaged in the harassing conduct, did not require anti-harassment training, and did not monitor the work environment.

j) As a result of Defendant and Perry's acts and omissions, Johnson continued to be subjected to the disability-based harassment described above.

k) On or about October 30, 2014, Blackburn reported to Perry's supervisor Donovan Bond, who was one of Defendant's district managers, that Johnson was being subjected to disability harassment.

l) Bond contacted Defendant's corporate officials and communicated Blackburn's complaint made on behalf of Johnson.

m) On or about November 5, 2014, Defendant's Regional Associate Relations Manager Billie Jo Bishop went to the Elkins store and interviewed Perry and employees of the store.

n) During the interviews that Bishop conducted, multiple employees at the Elkins store reported witnessing Johnson being subjected to disability harassment and that Johnson made contemporaneous statements to them that she was being subjected to such harassment.

o) Nevertheless, Bishop reported to Defendant that she had found no corroboration for the allegation that Johnson was being subjected to disability harassment and concluded the harassment reports were "unfounded." However, as a result of her interviews, Bishop was critical of Perry's general management and operation of the store and reported those findings to Defendant's corporate officials.

p) Defendant and Bishop failed to take prompt corrective actions reasonably calculated to ending the harassing conduct and preventing its recurrence. For example, Defendant has never taken disciplinary action against any employee of the Elkins store because they engaged in disability harassment, did not conduct a prompt and thorough investigation, failed to consider and act upon information received concerning the harassment, and did not take any other actions reasonably calculated to ending the harassing conduct and preventing its recurrence.

q) As a result of Defendant and Bishop's acts and omissions, Johnson continued to be subjected to the disability-based harassment described above.

r) Through the acts and omissions of Perry, Bishop and other Defendant officials, Defendant condoned and ratified the disability-based hostile work environment at the Elkins store to which Johnson was subjected and continues to be subjected.

19. In December 2015, Defendant subjected Sheria Blackburn to an adverse alteration of her terms and conditions of employment and to constructive discharge because of her known association with a person with a disability (Johnson), because she opposed employment practices made unlawful by the ADA, and as a form of interference, coercion, threats and intimidation because she exercised rights protected by the ADA and aided and encouraged Johnson to exercise or enjoy rights protected by the ADA.

a) On or about 2006, Blackburn, with the knowledge and consent of Defendant's Elkins store manager, obtained a second, part-time job with the U.S. Postal Service ("USPS"), and worked in both of her jobs without incident until December 2014.

b) Throughout his tenure as store manager at Defendant's Elkins store, David Perry knew that Blackburn had a second job with the USPS.

c) Throughout Blackburn's employment by Defendant and since that time, Defendant has permitted employees at Defendant's Elkins store to have concurrent employment with persons or entities other than Defendant.

d) On or about October 2014, prior to making the report of disability harassment to Donovan Bond on Johnson's behalf, Blackburn requested that David Perry provide her with temporary scheduling flexibility regarding her employment with Defendant so that she could temporarily increase her hours at USPS.

e) Perry indicated it would not be a problem to grant Blackburn the requested scheduling flexibility.

f) Prior to October 2014, Perry had granted similar requests for scheduling flexibility that were made by other managers at the Elkins store who held second jobs.

g) At all relevant times prior to December 9, 2014, Bishop, Perry, and other Defendant personnel knew that Blackburn was associated with Christena Johnson through her multiple reports of the disability harassment made on behalf of Johnson in order to protect Johnson from the disability discrimination to which she was being subjected, as well as other aspects of her association with Johnson, such as providing training and mentoring.

    h)    On or about December 9, 2014, shortly after Bishop visited the Elkins store, made her observations of Perry's management of the store, and questioned Perry and other employees in connection with Blackburn's report of disability harassment, Perry told Blackburn that she would not receive any further scheduling flexibility at the Elkins store, that she could no longer hold both jobs, and was required to either resign her position with Defendant or resign from her position at USPS.

    i)    In response to Perry's statement to Blackburn that she was required to resign her position with Defendant or her position with USPS, Blackburn asked about the reason for that change and Perry answered her question by making a statement to the following effect: "I told you we didn't want corporate involved down here."

    j)    As a result of Perry's statements and the ultimatum presented to her, Blackburn considered the working conditions in her employment with Defendant to be intolerable and felt compelled to resign her employment. For this reason, Blackburn resigned her employment with Defendant on or about December 9, 2014.

20.    On or about January 2015, Defendant subjected Christena Johnson to denial of promotion/selection to a furniture sales lead position on the basis of her disability and because she was regarded as disabled, because she opposed practices made unlawful by the ADA, and as a form of interference, coercion, threats and intimidation because of her exercise of rights protected by the ADA.

    a)    Throughout the first half of 2014, Blackburn and Johnson received training to become proficient in the Big Lots furniture leasing program.

b) On or about January 2015, Johnson informed Elkins store manager David Perry that she was interested in being selected for a vacant furniture sales lead position at the Elkins store, a position for which she was qualified.

c) In response to Johnson's statement, Perry told her he had already decided to select Bobbi Curtis for the position because Curtis could "do the talking better" than Johnson.

d) Bobbi Curtis does not have the type of disabilities that Johnson has.

e) Bobbi Curtis did not complain of disability harassment.

f) Prior to Perry's selection of Curtis for the furniture sales lead position, Johnson reported to Perry that Bobbi Curtis was one of the co-workers who were subjecting Johnson to disability harassment.

g) Johnson did not complete the formal application process for the furniture sales lead position because of the statements that Perry made to her, which dissuaded her from applying.

h) On or about January 2015, Defendant promoted Bobbi Curtis to the position of furniture sales lead.

21. In late 2015, Defendant subjected Johnson to denial of promotion/selection to an associate manager position on the basis of her disability and because she was regarded as disabled; because she opposed practices made unlawful by the ADA, filed a charge of discrimination and otherwise participated in proceedings under the ADA; and as a form of interference, coercion, threats and intimidation because of her exercise of rights protected by the ADA.

  a) On or about March 20, 2015, Johnson formally filed a charge of discrimination alleging that Defendant violated her rights protected by the ADA.

  b) In the fall of 2015, Johnson applied for a vacant associate manager position at the Elkins store, a position for which she was qualified.

  c) On or about October 2015, Elkins store manager David Perry selected another employee for the associate manager position.

  d) The employee selected for the associate manager position does not have the type of disabilities that Johnson has.

  e) The employee selected for the associate manager position did not complain of disability harassment.

22. The effect of the practice(s) complained of in Paragraph(s) 18 through 21(e), above, has been to deprive Johnson and Blackburn of equal employment opportunities and otherwise adversely affect their status as employees because of actual and perceived disability, association with a person who is disabled, their opposition to employment practices made unlawful by the ADA, Johnson's participation in ADA proceedings, and their exercise or assistance in the exercise and enjoyment of rights protected by the ADA.

23. The unlawful employment practices complained of in Paragraphs 18 through 21(e), above, were and are intentional.

24. The unlawful employment practices complained of in Paragraphs 18 through 21(e), above, were and are done with malice or with reckless indifference to the federally protected rights of Johnson and Blackburn.

## PRAYER FOR RELIEF

Wherefore, the Commission respectfully requests that this Court:

A.  Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in, or failing to take prompt, reasonable corrective action in response to, harassing conduct and enjoining other employment practices that discriminate on the basis of disability or relationships and association with disabled persons.

B.  Order Defendant to institute and carry out training, policies, practices and programs that provide equal employment opportunities for individuals with disabilities and that ensure that its employees are not subjected to a hostile work environment or discrimination, including but not limited to implementation of a set of approved procedures and programs pertaining to the Elkins, West Virginia store, as well as any business operations related thereto such as multi-unit management and human resource functions, that are designed to protect Christena Johnson from any further disability harassment or discrimination and to protect Sheria Blackburn from any further discrimination because of her association with Johnson,.

C.  Grant a permanent injunction enjoining Defendant, its officers, agents, servants, employees, attorneys, and all persons in active concert or participation with them, from engaging in retaliation or interference, threats, coercion or intimidation directed toward persons who exercise their rights protected by Sections 102 and 503 of the ADA, including but not limited to persons who report instances of disability-based harassment and instances of failure to take corrective action in response to reports of such harassment.

D.  Order Defendant to institute and carry out training, policies, practices, and programs that provide equal employment opportunities to persons who exercise their rights protected by Sections 102 and 503 of the ADA, including but not limited to persons who report

instances of disability-based harassment and instances of failure to take corrective action in response to reports of such harassment.

E. Order Defendant to submit periodic reports to the Commission identifying all complaints or observations of potential disability harassment; disability discrimination; or retaliation, interference, threats, coercion or intimidation for exercise of rights protected by the ADA that pertain to the Elkins, West Virginia store and any corrective actions taken in response to those complaints or observations.

F. Order Defendant to make whole Johnson and Blackburn by providing appropriate backpay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to instatement/reinstatement or front pay in lieu of instatement/reinstatement.

G. Order Defendant to make whole Johnson and Blackburn by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in Paragraphs 18 through 21(e), above, which were incurred as a result of Defendant's conduct, in amounts to be determined at trial.

H. Order Defendant to make whole Johnson and Blackburn by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of in Paragraphs 18 through 21(e), above, including emotional pain, suffering, inconvenience, loss of enjoyment of life, and humiliation, in amounts to be determined at trial.

I. Order Defendant to pay Johnson and Blackburn punitive damages for its malicious and reckless conduct described in Paragraphs 18 through 21(e), above, in amounts to be determined at trial.

J. Grant such further relief as the Court deems necessary and proper in the public interest.

K. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by its complaint.

Respectfully submitted,

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

JAMES L. LEE
ACTING GENERAL COUNSEL

GWENDOLYN YOUNG REAMS
ASSOCIATE GENERAL COUNSEL
WASHINGTON, D.C.

DEBRA M. LAWRENCE
REGIONAL ATTORNEY
EEOC – Philadelphia District Office

*Ronald L. Phillips/LTH*

RONALD L. PHILLIPS
SUPERVISORY TRIAL ATTORNEY
EEOC – Baltimore Field Office
City Crescent Building, 3rd Floor
10 South Howard Street
Baltimore, MD 21201
Phone: (410) 209-2737
Fax: (410) 962-4270
ronald.phillips@eeoc.gov

/s/ Lisa H. Hernandez
LISA H. HERNANDEZ
SENIOR TRIAL ATTORNEY
PA I.D. 87634
EEOC – Pittsburgh Area Office
1000 Liberty Avenue, Suite 1112
Pittsburgh, PA 15222
Phone: (412) 395-5852
Fax: (412) 395-5749
lisa.hernandez@eeoc.gov


BETSY S. JIVIDEN
ACTING UNITED STATES ATTORNEY


BY:  /s/ Helen Cambpell Altmeyer
HELEN C. ALTMEYER
ASSISTANT UNITED STATES ATTORNEY,
CIVIL DIVISION CHIEF
WV Bar #117
United States Attorney's Office
U.S. Courthouse & Federal Building
1125 Chapline St., Suite 3000
Wheeling, WV 26003
Telephone: (304) 234-0100
helen.altmeyer@usdoj.gov