IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>     Plaintiff,<br><br>  v.<br><br>BIG LOTS STORES, INC.,<br><br>     Defendant. | Civil Action No. 2:17-cv-00073<br><br>Hon. John Preston Bailey |

### DEFENDANT' BIG LOTS STORES, INC.'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO ITS MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Plaintiff's Opposition misstates, exaggerates, and simply creates new facts. Plaintiff still fails to create a genuine issue of material fact. First, Christena Johnson was neither actually disabled nor regarded as disabled. Johnson's sham declaration must be disregarded because it directly contradicts her sworn testimony that her impairment does not substantially limit a major life activity. Further, whether an individual is regarded as disabled must be based on the perceptions of the decisionmakers, and there is no evidence that any decisionmaker at Big Lots regarded Johnson as disabled.

Second, Plaintiff's conclusory allegations are insufficient to establish a causal connection between much of the alleged mistreatment by Johnson's coworkers and her hearing impairment. Accordingly, Plaintiff failed to establish that Johnson was subjected to severe or pervasive harassment because of an impairment.

Third, contrary to Plaintiff's mischaracterizations, Big Lots took prompt action in response to the alleged harassment. The investigation involved numerous interviews and

retraining of the entire store. Johnson never complained of alleged harassment again and remains employed today. Big Lots' response was objectively reasonable and entitles it to summary judgment.

Fourth, there is no evidence to support the retaliation claims. Johnson was objectively less qualified for the furniture manager position and Blackburn voluntarily resigned.

Finally, the EEOC makes almost no efforts and wholly lacks evidence to demonstrate an entitlement to injunctive relief or to punitive damages. Its request for these forms of relief can be dismissed as a matter of law.

## II. JOHNSON ADMITTED SHE IS NOT DISABLED

Johnson testified that she does not suffer from an impairment that substantially limits a major life activity. Her testimony was unequivocal.

> Q: Okay. The charge references disability discrimination. Are you disabled?
>
> A: I'm deaf in my right ear.
>
> Q: Do you have any other impairments that you believe constitute a disability other than your right ear?
>
> A: No.
>
> \* \* \*
>
> Q: During your employment with Big Lots did you have any work restrictions or limitations as a result of your hearing impairment?
>
> A: No.
>
> Q: Has your hearing impairment impacted your performance in any other jobs that you've held?
>
> A: No.
>
> Q: Okay. Does your hearing impairment impact you or impose any limitation on your life outside of work?

2

A:     No.

(Johnson Dep., pp. 68, 69.)  Simply having an impairment is insufficient to qualify as disabled under the Americans with Disabilities Act Amendment Act ("ADAAA").  Indeed, courts have held that deafness in one ear does not meet the definition of "disability" under the Americans with Disabilities Act Amendment Act ("ADAAA").  *See, e.g., Yates v. W. Contra Costs Unified Sch. Dist.*, 2017 U.S. Dist. LEXIS 123594, at *15–19 (N.D. Cal. Aug. 4, 2017); *Mengel v. Reading Eagle Co.*, 2013 U.S. Dist. LEXIS 45300, at *13 (E.D. Pa. Mar. 28, 2013).[1]

An ADA plaintiff must prove an impairment that *substantially limits* a major life activity. 42 U.S.C.S. § 12102(1).  Johnson's above testimony was clear and unambiguous that she was deaf in only one ear, had no other impairments, and her single impairment did not limit her life activities at work or away from work.  Having an impairment that affects her hearing is not enough.  Johnson's admission that she has no limitations on her life, let alone a substantial limitation is fatal to her claims. She is not covered by the ADA.

Faced with the embarrassing reality of bringing a disability claim on behalf of someone that is admittedly not disabled, Plaintiff attempts to generate an issue of fact by submitting a declaration from Johnson that directly contradicts her prior, sworn deposition testimony.  In spite of Johnson's above testimony, the Opposition contends that Johnson has hearing loss in both ears and a speech impairment. (Opposition p. 1.) It is axiomatic, however, that a "party cannot create a genuine issue of material fact sufficient to survive summary judgment simply by contradicting his or her previous sworn testimony."  *Cleveland v. Policy Management Systems, Corp.*, 526 U.S. 795, 806 (1999); *see also Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) ("If a party who has been examined at length on deposition could raise an issue of fact

---

[1] Plaintiff's argument that Big Lots' relied on outdated case law is false.  The above- cited cases post-date the ADAAA.

simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact.") The Fourth Circuit recently reiterated that "a genuine issue of material fact is not created where the only issue of fact is to determine which of two competing versions of the plaintiff's testimony is correct." *Wilson v. Gaston Cty.*, 685 Fed. Appx 193, 199, 2017 U.S. App. LEXIS 6354, at *12 (4th Cir. Apr. 13, 2017).

Johnson's declaration must be disregarded and stricken. Without it, there is no evidence that her impairment substantially limits a major life activity. As a result, Plaintiff cannot demonstrate that Johnson was actually disabled.

## III. JOHNSON WAS NOT REGARDED AS DISABLED

Plaintiff makes the absurd argument that its "regarded as" claim survives because Big Lots did not specifically address it in its motion. Big Lots was not required to make a separate argument for each theory, particularly one for which there is no evidence in the record. Rather, aside from separately noting Johnson's admission that she was not actually disabled, Big Lots' motion applies to Plaintiff's harassment claim in its entirety and entitles Big Lots to judgment as a matter of law regardless of whether Plaintiff pursues an "actually disabled" or "regarded as" theory.

Moreover, as discussed in Big Lots' Brief, and acknowledged by Johnson and Blackburn, the only individuals that allegedly perceived Johnson as impaired were her coworkers. However, under a "regarded as" theory, the only relevant focus is "on the reactions and perceptions of the employer's decisionmakers…" *Young v. UPS*, 784 F.3d 192 (4th Cir. 2013); *Wilson v. Phoenix Specialty Mfg. Co., Inc.*, 513 F.3d 378, 385 (4th Cir. 2008) (quoting *Runnebaum v. NationsBank of Md., N.A.*, 123 F.3d 156, 172-73 (4th Cir.1997), abrogated on other grounds by *Bragdon v.*

4

*Abbott*, 524 U.S. 624, 118 S. Ct. 2196, 141 L. Ed. 2d 540 (1998)) (internal alteration omitted). Here, none of the decisionmakers perceived Johnson as disabled. (*See* Perry Dep., p. 49; Bond Dep., pp. 38-44 (testifying that Johnson was capable of performing various job functions); Bishop Dep., pp. 68-69). Dave Perry testified that he "didn't consider Christina disabled" and that he learned of her alleged hearing impairment only upon the initiation of this matter with the EEOC. (Perry Dep. 161, 176.) Accordingly, Plaintiff cannot establish that Big Lots perceived Johnson as disabled.

## IV. THE ALLEGED HARASSMENT WAS NOT BECAUSE OF A DISABILITY

The EEOC argues there is "ample evidence" connecting the alleged harassment with Johnson's hearing. There is not. "The critical issue for consideration in the 'because of' inquiry is whether a disabled plaintiff has been 'exposed to disadvantageous terms or conditions of employment to which [nondisabled employees] are not exposed.'" *Mason v. Wyeth, Inc.*, 183 F. App'x 353, 361 (4th Cir. 2006) (internal citations omitted). Plaintiff must present actual evidence upon which a reasonable jury could find that Johnson was singled out *because of* her impairment. *Id*. at 362. Conclusory statements are not enough.

Plaintiff argues that Johnson's coworkers "regularly and expressly referred to [Johnson's] deafness in derogatory ways while harassing her." (Opposition pp. 32–33.) Plaintiff relies on conclusory statements from witnesses that the alleged mistreatment was "because of" Johnson's hearing. (Opposition p. 33.) Yet, almost all of the alleged acts were facially unrelated to Johnson's hearing. For example, Johnson testified that Bertelli erased her name from the schedule, not because of her hearing, but, rather, because she thought it was unfair that Johnson was being scheduled for more hours than Bertelli. (Johnson Dep. pp. 77, 79.) As further discussed in Big Lots' motion, only a few, sporadic comments had any connection at all to

Johnson's hearing (assuming they were made at all).  The remainder of the relied upon conduct cannot form the basis for Plaintiff's harassment claim.  *See, e.g., Cannice v. Norwest Bank Iowa, N.A.*, 189 F.3d 723, 726 (8th Cir. 1999) (employee with depression could not show harassment because allegations of not being promoted, having breaks monitored, being asked to remove medication from his desk, and having a tissue tossed into his cubicle with a note about a "crying towel," were not sufficiently related to his disability).

The EEOC's assertion that "[t]he record reflects that the four perpetrators singled Johnson out for a persistent, wholly unique level of degradation" lacks any support.  There is no evidence that Johnson was singled out for mistreatment *because of* her disability.  To the contrary, Tisha Eddleman and Gina, the District Training Manager, both of whom are non-disabled, were allegedly subject to nearly identical treatment by the same alleged harassers.  (Johnson Dep. p. 168, 171, 177, 186; Blackburn Dep. p. 90–93, 98–99.)

The EEOC's argument that the use of the term "retard" permits a finding that all of the alleged harassment was based on Johnson's hearing misstates the nature of those alleged encounters.  According to Johnson, Bertelli used the term when she was generally angry, Curtis allegedly said it when she was angry that Johnson did not help her with moving furniture, and Graham supposedly used the word when responding to Johnson's request that she assist moving furniture.  (Johnson Dep. pp. 82–89.)  None of these alleged incidents indicate that the term was used to make fun of Plaintiff's hearing.[2]  Rather, the EEOC simply assumes there was a connection to her impairment.  But Plaintiff's assumption is insufficient to create a causal connection.  *Autry v. N.C. Dep't of Human Res.*, 820 F.2d 1384, 1386 (4th Cir. 1987) ("causation must be shown by probability rather than mere possibility.")  Plaintiff has not shown that

---

[2] The single case cited by Plaintiff involved a claim for IIED brought under Kentucky state law and is, therefore, inapposite.  *See Long v. Hoffman Enclosures, Inc.*, 2008 U.S. Dist. LEXIS 49910, at *9 (E.D. Ky. June 23, 2008).

Johnson's coworkers mistreated her because of her hearing impairment. Accordingly, Plaintiff cannot prove that Johnson was mistreated because she is deaf in one ear. Summary judgment is therefore warranted.

## V. THE ALLEGED CONDUCT WAS NOT SEVERE OR PERVASIVE

Plaintiff makes the sweeping generalization that Johnson's coworkers waged a "long-term campaign of frequent, humiliating workplace abuse against . . . Johnson." (Opposition p. 30.) But as explained above and noted in the Motion, Johnson's coworkers did not single her out for mistreatment because of her hearing and thus their behavior is not actionable under the ADA. Furthermore, the few, sporadic acts that can arguably be connected to Plaintiff's impairment (assuming they were made at all) are not, as a matter of law, sufficiently severe or pervasive to establish an objectively hostile work environment.

"[P]laintiffs must clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008) (discussing hostile work environment in Title VII context). This is because "[w]orkplaces are not always harmonious locales, and even incidents that would objectively give rise to bruised or wounded feelings will not on that account satisfy the severe or pervasive standard. Some rolling with the punches is a fact of workplace life." *Id*. Accordingly, a plaintiff cannot rely merely on "rude treatment by [coworkers]," *Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006), or "simple teasing, offhand comments, and isolated incidents (unless extremely serious)," *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998), to establish a hostile work environment.

In the Fourth Circuit, comments regarding a plaintiff's hearing impairment such as, "Pay Attention," "Didn't you hear the phone ring?," "Is your hearing aid turned up?," and "Why do you go to meetings, you can't hear anyway," do not meet the standard required to establish a

7

hostile work environment. *See Shiflett v. GE Fanuc Automation Corp.*, No. 9701687, 1998 U.S. App. LEXIS 13186, at \*4 (4th Cir. Jun. 19, 1998).  Here, those alleged acts of harassment that are possibly connected to Johnson's hearing are not enough to constitute an actionable hostile work environment under the ADA. *See Shiflett*, 1998 U.S. App. LEXIS 13186, at \*4.[3]  Thus, the Court should grant summary judgment on this claim.

## VI. BIG LOTS IS NOT LIABLE FOR COWORKER HARASSMENT

Plaintiff has also failed to establish Big Lots' liability for the alleged conduct of Johnson's coworkers.  Plaintiff argues that Big Lots is responsible for harassment because Johnson, Blackburn, and Eddleman complained to Perry about harassment and nothing was done.  (Opposition p. 32.)  As an initial matter, Plaintiff misstates the record.  Perry did investigate Johnson's complaints that she was being picked on, but he never witnessed the alleged behavior and could not confirm that the behavior was occurring based on conflicting accounts.  (Perry Dep. pp. 93, 99.)

Plaintiff also claims that Big Lots' investigation into the claims that Bishop was being harassed was insufficient, stating, in conclusory fashion, that a "reasonable employer . . . would have known of the hostile work environment." (Opposition p. 34.)  What Plaintiff conveniently omits, however, is that Johnson did not share the allegations described in her deposition during Big Lots' investigation.  Instead, Johnson focused on issues related to store operations.  (Johnson Dep. p. 161, Ex. 12 p. 1–2.)  And, critically, the witnesses who claimed Johnson had been mistreated based their claims on nothing more than hearsay from other coworkers.  (Bishop Dep. p. 104.)  Nonetheless, Big Lots conducted training with the entire store on its Harassment policy and expectations regarding treatment of coworkers.  (Bishop Dep. pp. 119–21.)

---

[3] Johnson's allegations are remarkably similar to allegations the *Shiflett* court found insufficient.  (*See, e.g.,* Johnson Dep. pp. 81–82) (alleging Bertelli asked Plaintiff, "Can't you answer [the telephone], you deaf person?")

Big Lots' prompt response to Johnson's allegations was reasonable under these particular circumstances. Importantly, Johnson *never* contacted Bishop after Big Lots completed its investigation, despite Bishop's request that Johnson call her with any concerns. (Johnson Dep. p. 136–37.) Indeed, Bishop saw Johnson in the store multiple times after the 2014 investigation. Johnson never raised any concerns. (Bishop Dep. pp. 131-132, 148.) To Big Lots' knowledge, any alleged harassment had stopped. Accordingly, Big Lots cannot be held liable for any harassment. *EEOC v. Xerxes Corp.*, 639 F.3d 658, 674-75 (4th Cir. 2011) (The standard [for employer liability] in no way requires an employer to dispense with fair procedures for those accused or to discharge every alleged harasser. And a good faith investigation of alleged harassment may satisfy the . . . standard, even if the investigation turns up no evidence of harassment. Such an employer may avoid liability even if a jury later concludes that in fact harassment occurred.")

## III.   PLAINTIFF HAS NOT ESTABLISHED RETALIATION

Plaintiff's retaliation claims fail because, as discussed below, there is no evidence of a causal connection between any adverse employment action and any protected activity, and Plaintiff cannot impugn the legitimate bases for Big Lots' employment decisions.

### A.   The EEOC Cannot Demonstrate that Blackburn was Retaliated Against.

Blackburn's voluntary resignation was not an adverse action nor was it motivated by retaliatory intent. Blackburn was not subjected to an adverse employment action because she resigned her position with the Company. *See Evans v. Davie Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir. 1985) (retaliation claim requires adverse employment action, which does not include when the plaintiff voluntarily resigns). Asking an employee to comply with an establish policy is not an adverse action. As retaliatory intent, Plaintiff mistakenly focuses on Perry's

behavior.[4]  Bishop — not Perry — made the decision to enforce Big Lots' policy requiring open availability.  Blackburn admits that Perry did not want to end the arrangement.  (Blackburn Dep. p. 117.)  Nonetheless, it undeniably violated Big Lots' established policy, which Bishop discovered during her 2014 investigation.  (Bishop Dep. pp. 123, 126.)

Plaintiff's reliance on Perry's statement that "… we didn't want [corporate] down here," even taken in the light most favorable to Plaintiff, does not indicate retaliatory motive.  To the contrary, it indicated Perry's desire to protect Blackburn from enforcement of the policies that required her to choose between her management position at Big Lots or her USPS position.

Big Lots required Blackburn to change her schedule because her postal employment interfered with the ability to work at Big Lots and because all managers are required to have open availability.  (Blackburn Dep. p. 118; Perry Dep. p. 177–78.)  Plaintiff has no evidence of pretext.  At the pretext stage, the EEOC must provide proof that retaliation is the "but for" cause for the alleged adverse action.  *See Foster v. Univ. of Md.-Eastern Shore*, 787 F.3d 243, 252 (4th Cir. 2015) (concluding that "the *McDonnell Douglas* framework has long demanded proof at the pretext stage that retaliation was a but-for cause of a challenged adverse employment action.").  The EEOC has not done so.  Indeed, Blackburn knew she was not following Company policy.  She was not surprised when Bishop insisted that she follow it.  Accordingly, summary judgment is proper on Blackburn's retaliation claim.

### B. Johnson Was Not Retaliated Against.

Johnson did not face retaliation when she was not promoted to the open furniture manager.[5]  Plaintiff relies extensively on the timing between Bishop's investigation of Johnson's

---

[4] Vague allegations that Perry acted differently do not constitute evidence of retaliation.
[5] Plaintiff claims that "Big Lots' Motion does not challenge the sufficiency of EEOC's disability-discrimination claim regarding Johnson's non-promotion, so that claim must proceed to trial regardless of the disposition of the

10

clams of mistreatment and the selection of Bobbi Curtis for the furniture manager position. However, Plaintiff misstates the timing between the investigation and Curtis's promotion to furniture manager. The investigation started in October 2014, with Blackburn's call to her District Manager. (Blackburn Dep. pp. 87–89.)

Given that Big Lots promoted Curtis to the furniture department manager position in February, 2015, the approximately three to four month span between Blackburn's report and the selection of the furniture department manager is not sufficient by itself to establish that retaliatory motive was the cause for Johnson's lack of promotion. *See, e.g., Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (holding that three to four months between the termination and protected activities is too long to establish a causal connection by temporal proximity alone); *Shields v. Federal Express Corp.*, 120 F. App'x 956, 963–64 (4th Cir. 2005) (three to four months was insufficient to raise an inference).

In a further attempt to establish retaliation, the EEOC makes the incredible claim that Big Lots' explanation that Curtis was more qualified because she had management experience is a "classic indicia of pretext." To the contrary, it is the legitimate basis on which most promotions get made. Not surprisingly, "[j]ob performance and relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954 (4th Cir. 1996). An employer has discretion to choose among "equally qualified candidates, provided the decision is not based upon unlawful criteria." *Wileman v. Frank*, 979 F.2d 30, 38 (4th Cir. 1992) (*citing Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 259 (1981)). Here, Big Lots selected Curtis, rather than Johnson, because it believed she had managerial experience and was knowledgeable about Big Lots.

---

instant Motion." (Opposition p. 45.) However, as noted in the Motion, Johnson is not covered by the ADA and lacks evidence of discrimination. This claim necessarily fails.

11

(Browning Dep. pp. 43–44.)  Johnson admits to lacking managerial experience.  (Johnson Dep. p. 20.)  Moreover, Johnson remains employed and Big Lots even arranged for Johnson to undergo management training to improve her skills.  (Johnson Dep. 19-20.)  Thus, there is no evidence of pretext.

Plaintiff further suggests that "Big Lots and Perry have shifted their explanations for the decision over time."[6]  (Opposition p. 46.)  Plaintiff explains that Big Lots stated in its administrative position statement that Johnson did not apply for the furniture manager position.  (Opposition pp. 46–47.)  This suggestion does not demonstrate that Big Lots did not promote Johnson because of her participation in the Bishop investigation.  *Newsom v. Barnhart*, 116 F. App'x 429, 433 (4th Cir. 2004) ("Even if there were inconsistency, there would be no reason to believe that such inconsistency reflects discriminatory intent.").

Finally, Plaintiff argues "Perry opposed Johnson from being considered for the promotion into Blackburn's former position, even attempting to prevent her interview." (Opposition p. 41.)  Plaintiff implies that Perry opposed interviewing Johnson because she complained of alleged harassment, but provides no support for its conclusory argument.  Perry did not attempt to "prevent [Johnson's] interview."  At worst, he indicated to the District Team Leader that he did not plan to interview Johnson because of past productivity issues.  (Browning Dep. pp. 42-43.)  Regardless, Johnson testified that she interviewed for the position, negating any inference that her application was somehow obstructed for retaliatory reasons.  Additionally, Curtis was selected for the position because of her experience and knowledge; two legitimate, objective bases.  (Browning Dep. pp. 43–44.)  Johnson's impairment did not guarantee her any job for

---

[6] Ironically, it is Johnson that has changed her position on this topic.  While she testified at deposition that she applied for the furniture manager position, her initial statements to the EEOC indicated that she did not.  (Johnson Dep. Ex. 14.)  Big Lots accepted for purposes of this Motion only, as it must, that Johnson's testimony is true.  It maintains, as it did in its position statement and as Johnson initially did, that she did not apply.  Summary judgment in favor of Big Lots does not require a resolution of this issue.

which she applied. The law does not "require an employer to adopt a life of economic altruism" and immunize protected class members from adverse employment actions. *See Gairola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281, 1287 (4th Cir. 1985). Rather, the law "merely preclude[s] an employer treating some employees less favorably than others 'because of' an impermissible characteristic." *Id*. There is no evidence that Big Lots' decision was based on anything other than legitimate, non-retaliatory reasons. Even Johnson admitted she did not possess management experience. (Johnson Dep. p. 20.) Thus, Plaintiff's retaliation claims fail.

## IV. INJUNCTIVE RELIEF IS NOT APPLICABLE TO THE FACTS OF THIS CASE AND OVERBROAD.

Plaintiff has not shown that injunctive relief is appropriate in this case nor has it made any effort to identify the relief it seeks. Injunctive relief is discretionary based on equitable principles. *Spencer v. Gen. Electric Co.*, 894 F.2d 651, 660 (4th Cir. 1990). Absent "cognizable danger of a recurrent violation" of Title VII, it is not error to refuse an injunction. *Id*. Contrary to Plaintiff's position and as noted in the Motion, Big Lots took action reasonably calculated to ending the alleged harassment: Big Lots terminated Perry, under whose leadership the alleged interpersonal issues occurred, as well as most of the alleged harassers. (Perry Dep. pp. 144–51; Johnson Dep. pp. 105, 109; Curtis Dep. p. 15.) And though Bertelli, one of the alleged harassers, and Bishop remain employed, Johnson has not experienced single instance of mistreatment since Perry was terminated. (Johnson Dep. p. 198.) Plaintiff lacks evidence of any cognizable danger of future violations. Mere speculation is not enough.

Plaintiff also has failed to show that the injunctive relief sought is not vague or broader than necessary. An injunction cannot be "broader than necessary to achieve its desired goals." *Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 766 (4th Cir. 1998). It "must be based on the constitutional violation, must be remedial, and must be granted with consideration of its effect on

13

the employer." *United States EEOC v. Consol Energy, Inc.*, 151 F. Supp. 3d 699, 712 (N.D.W. Va. 2015). Even in an Opposition of 45 pages, Plaintiff made no effort to describe the injunctive relief it seeks or to explain why such relief is warranted and not overly broad. At the summary judgment stage, such paltry efforts should not be rewarded.

## V.     PUNITIVE DAMAGES ARE NOT AVAILABLE AS A MATTER OF LAW.

Plaintiff lacks evidence that Big Lots acted with malice or reckless indifference to Johnson's statutory rights; thus, even were this Court to hold that there was a genuine issue of fact on liability, Plaintiff has not met the heightened standard for punitive damages. Punitive damages are available only when the plaintiff demonstrates that the employer acted with "malice or with reckless indifference to the [plaintiff's] federally protected rights. 42 U.S.C. § 1981a(b)(1). The Supreme Court has explained that the plaintiff, at minimum, must demonstrate that his employer "discriminate[d] in the face of a perceived risk that its actions will violate federal law*." Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536(1999). This is a "high standard to meet. *Consol Energy, Inc.*, 860 F.3d at 151; *Reuber v. Food Chemical News, Inc.*, 925 F.2d 703, 708 (4th Cir. 1991) (punitive damages require proof by clear and convincing evidence).

When an employer has taken "good faith efforts" at compliance, it does not act with reckless disregard of federally protected rights. *Kolstad*, 527 U.S. at 54. Accordingly, punitive damages may not be awarded against an employer "for the discriminatory employment decisions of managerial agents where these decisions are contrary to the employer's good faith efforts to comply with Title VII." *Id*. at 545. Big Lots maintains anti-harassment, anti-discrimination, and other policies designed to protect its employees. (*See* Johnson Dep. pp. 57–58; Bishop Dep. pp. 71–72, 103.) The Elkins associates were trained on these policies when they were hired, and managers were retrained annually. (Perry Dep. p. 75; Bishop Dep. pp. 130–31.) When

Blackburn notified the District Manager that she believed there were unlawful activities occurring, the corporate HR Department interviewed her in less than an hour of her call. (Blackburn Dep. pp. 87–88.) These good faith efforts foreclose the possibility of punitive damages in this case. *See Kolstad*, 527 U.S. at 528. Plaintiff admits that Perry and Bishop were trained on Big Lots' policies, but contends that Perry and Bishop's efforts to address harassment and discrimination fell short of what is required by law.

Plaintiff contends Perry "had never been trained on how to perform workplace investigations nor on how to conduct employee interviews after receiving complaints of workplace harassment." (Opposition p. 10.) But Perry testified that he and all managers received annual training on Big Lots' anti-harassment, anti-discrimination, and standards of conduct policies that are designed to protect employees' rights.[7] (Perry Dep. p. 75.) Likewise, Plaintiff claims Big Lots failed to prepare Bishop to investigate allegations of workplace harassment. (Opposition p. 18.) Yet, Bishop testified that Big Lots provides her with regular training on workplace discrimination and on interviewing potential victims of workplace harassment, and that she had been employed in several human resources positions before working at Big Lots. (Bishop Dep. pp. 128, 130, 137–39.)

Even construing the evidence most favorably to the EEOC does not suggest that the Company's management team behaved in a way that they subjectively believed would violate the law. *Consol Energy, Inc.*, 860 F.3d at 151. Accordingly, punitive damages are not appropriate as a matter of law, and the Court should dismiss this claim.

## VI. CONCLUSION

Based on the facts and authorities, the Court should enter summary judgment in favor on Big Lots on the EEOC's Complaint in its entirety.

---

[7] All associates are trained on the policies at the time of hire. (Perry Dep. p. 75.)

Dated:  August 13, 2018

Respectfully submitted,

*/s/ Justin M. Harrison*
Mark A. Knueve (0067074), Trial Attorney*
Daniel J. Clark (0075125)*
Cory D. Catignani (0084329)*
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, Ohio 43215
Tel.: (614) 464-5645
Fax: (614) 719-4866
maknueve@vorys.com
djclark@vorys.com
cdcatignani@vorys.com
*Admitted *pro hac vice*

Justin M. Harrison (WVSB #9255)
JACKSON KELLY PLLC
Post Office Box 553
Charleston, WV 25322
Tel.: (304) 340-1358
Fax: (304) 340-1080
justin.harrison@jacksonkelly.com

David R. Stone (WVSB #12824)
JACKSON KELLY PLLC
150 Clay Street, Suite 500
Morgantown, WV 26501
Tel.:  (304) 284-4100
Fax:  (304) 284-4142
drstone@jacksonkelly.com

*Counsel for Defendant Big Lots Stores, Inc.*

THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS DIVISION

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

        Plaintiff,

v.

BIG LOTS STORES, INC.,

        Defendant.

Civil Action No. 2:17-cv-00073

Hon. John Preston Bailey

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on August 13, 2018, I electronically filed the foregoing Defendant's Reply to Plaintiff's Response in Opposition to Motion for Summary Judgment with the Clerk of the Court using the CM/ECF system.

*/s/ Justin M. Harrison*
Justin M. Harrison (WVSB #9255)